UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 23-CV-2836

| | |
|---|---|
| E.H., I.H., and M.H., by their Mother, Jeanne Huberty; Jeanne Huberty, the Mother, individually, Plaintiffs, v. Saint Paul Public Schools, Independent School District, No. 625 Defendant. | **COMPLAINT** |

_____

For their Complaint against Saint Paul Public Schools, Independent School District ("ISD") No. 625, Plaintiffs states and alleges as follows:

## NATURE OF ACTION

1. This complaint is brought by Plaintiffs E.H., I.H., and M.H. by their mother, Jeanne Huberty ("Parent"), as well as by the Parent individually to redress retaliation actions by the Saint Paul Public Schools ("School District"). This action is brought as a matter of right under the Americans with Disabilities Act and 504 Rehabilitation Act.

2. Plaintiffs are alleging violations of the anti-retaliation provisions of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Section 504") together referred to as "the Acts."

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

5. At all relevant times Plaintiffs were residents of Minnesota.

6. At all times relevant to this Complaint the Defendant, Saint Paul Public Schools, ISD No. 625, was a school district operating in Ramsey County in the State of Minnesota.

7. Saint Paul Public Schools, ISD No. 625 is a public entity and receives federal funding.

8. The three child plaintiffs attend an elementary school run by the Saint Paul Public Schools called the Mississippi Creative Arts School ("MCA") located at 1575 L'Orient Street, Saint Paul, Minnesota 55117.

## BACKGROUND

9. The three children attend MCA. Parent adopted each child from foster care and those children all have diagnoses that qualify as disabilities covered under the ADA, 42 U.S.C. § 12102, and the children qualify as handicapped persons under Section 504, 29 U.S.C. § 794, referencing 42 U.S.C. § 2000d et seq; also see, 34 C.F.R. §§ 140.3 and 104.61 referring 34 C.F.R. § 100.7(e).

10. At the time of the retaliatory acts by the school, E.H. was in third grade and had an Individualized Education Plan ("IEP").

11. Through the IEP development and implementation, medical records shared with the School District, and Parent's communication with the School District, the School District was aware that E.H. was diagnosed with Alcohol Related Neurodevelopment Disorder, Attachment Disorder, Insomnia, and Attention Deficit Hyperactivity Disorder.

12. E.H.'s disabilities affect the major life activities of caring for themself and interacting with others.

13. At the time of the retaliatory acts by the school, I.H. was in second grade and had an IEP.

14. Through the IEP development and implementation, medical records shared with the School District, and Parent's communication with the School District, the School District was aware that I.H. was diagnosed with Prenatal Drug Exposure, Anxiety, Attention Deficit Hyperactivity Disorder, and Insomnia.

15. I.H.'s disabilities affect the major life activities of caring for themself and interacting with others.

16. At the time of the retaliatory acts by the school, M.H. was in first grade and had an IEP.

17. Through the IEP development and implementation and Parent's communication with the School District, the School District was aware that M.H. was diagnosed with Other Specified Neurodevelopmental disorder associated with complex medical history (premature birth, in utero substance exposure), Attention Deficit Hyperactivity Disorder, Intermittent Asthma, Insomnia, Atopic dermatitis, Pseydostrabismus (not impacting her vision), and drop attack seizures (Epilepsy).

18. M.H.'s disabilities affect the major life activities of caring for themself and interacting with others.

## FACTS

19. On or around September 14, 2021, Parent started to regularly connect with School District Administration at MCA about her concerns on the topics of school climate as well as the special education needs of her children.

20. In June of 2022, Parent called the School District's Principal for MCA about some concerns regarding the special education needs of her children and requesting that they have consistent supports in place at the school.

21. On August 29, 2022, Parent called the School District's Principal for MCA about some concerns again and left a message.

22. On August 29, 2022, the School District's Principal for MCA emailed Parent about the start of the school year and provides in the email that if Parent wants consistency for her special education children that she could change schools.

23. On August 30, 2022, Parent and School District's Principal for MCA email back and forth about the Principal being confused on what Parent was asking related to consistency for her children.

24. In the Fall of the 2022-2023 school year, E.H. missed 8 days of school. Two of those days were marked absent unexcused.

25. In approximately mid-January or February of 2023, Parent contacted the Office of Special Services Supervisor, Chong Thor, about E.H.'s absences being marked unexcused when it was due to the child's mental health. Mr. Thor shared that mental

health absences should be marked as excused absences and that he would contact the School District's Principal for MCA about marking them correctly.

26. In from January 4, 2023, through March 2, 2023, E.H. was marked absent unexcused 6 times.

27. On March 7, 2023, E.H. missed another day of school.

28. On March 8, 2023, Parent participated in an in-person meeting with the School District's Principal for MCA and the School District's Assistant Superintendent to discuss the needs of her special education children as well as school climate concerns. Parent advocated for MCA to mark mental health absences as excused for E.H. Parent advocated for consistency in special education staff for I.H. Parent asked about M.H.'s progress on their IEP.

29. On March 13, 2023, School District's Principal for MCA emailed Parent alleging that Parent was threatening and aggressive during the March 8th meeting and directing Parent to talk to the Saint Paul Public Schools Ombudsperson. The Principal did not cite any specific examples of threatening or aggressive behavior by Parent.

30. Parent denies being threatening or aggressive during the March 13, 2023, meeting.

31. Between March 13, 2023, through March 23, 2023, Parent did not have contact with the School District's Principal for MCA.

32. On March 23, 2023, Parent arrived at the MCA building for Parent-Teacher Conferences. Parent stopped at the sidewalk area by the roadway to talk to the Teacher Union Representative, Assistant Teacher Union Representative, and a Parent Advocate

who were outside handing out flyers about a meeting for parents to address school climate issues. Parent talked to this group for approximately 6 minutes and 30 seconds.

33. Approximately 7 minutes later, Parent moved her car into the school parking lot and entered the MCA building to attend the Parent-Teacher Conference. Parent met with a teacher, however, the conference was interrupted when the School District's Principal for MCA entered the room told Parent that she was being trespassed from the building. School District's Principal for MCA told Parent to come down to the front desk to get the trespass notice. Parent did so and waited approximately 10 minutes to get the trespass notice. Parent then left the building.

34. On March 24, 2023, Parent emailed the School District's ombudsperson about her concerns of being trespassed from the building.

35. On March 24, 2023, at 4:55pm and 5:52pm, Parent emailed the School District's ombudsperson with more information on her concerns about being trespassed from the building.

36. On March 29, 2023, I.H. and M.H. missed school because Parent was unable to pick them up to attend their outside occupational therapy appointments due to the trespass notice.

37. On March 30, 2023, the March 23, 2023 Trespass Notice was amended because the original document violated the children's right to Free and Appropriate Public Education ("FAPE"), however, the Trespass Notice still prohibits Parent from entering the school building without requesting permission 24 hours in advance and thereby interferes with Parent picking up M.H. after seizure drop attacks or attending school

6

events when invited last minute by her children. For instance, in May of 2023 I.H. begged Parent to attend an assembly but she could not attend because she did not put in 24-hour notice. Further, on September 13, 2023, E.H. and I.H. forgot to take their medication and the school nurse had to walk them home to get their medication, which resulted in them missing school.

38. Approximately in April of 2023, the Saint Paul Public Schools reported Parent to Ramsey County Child Protection for Educational Neglect due to missed school days by E.H.

39. On April 13, 2023, Parent attended an IEP meeting and requested an IEP reevaluation of E.H.

40. On April 26, 2023, the School District sent home the Prior Written Notice (PWN) with their proposal for the IEP reevaluation assessment for E.H.

41. On April 28, 2023, the Ramsey County Truancy/Educational Neglect Diversion Program contacted Parent about the report. E.H. had not missed any school since March 7, 2023.

42. On May 1, 2023, Parent objected to IEP reevaluation recommendations for E.H. specifically requesting that the reevaluation also include assessments on the child's speech and language needs.

43. On May 3, 2023, Parent's Attorney emailed the School District's Attorney about the errors in the attendance report for E.H. and requested that the Child Protection report be withdrawn.

44. On May 16, 2023, the School District's Attorney responded that the School District corrected the attendance document for E.H.

45. On June 5, 2023, Parent and her attorney attended a reevaluation meeting to discuss a comprehensive reevaluation for E.H.; specifically, the speech assessment that Parent was requesting. During the IEP Team meeting the Speech Language Pathologist ("SLP") opposed assessing the child because she spoke with E.H. a few times and did not see a need for this service, however, after the meeting the SLP agreed in a Prior Written Notice ("PWN") that she would perform informal assessments.

46. On June 7, 2023, Parent objected to the reevaluation proposal due to the preconceived ideas by the Speech and Language Pathologist that E.H. did not require this service. The signed Prior Written Notice objecting to the speech assessments was emailed to the School District's Attorney on June 7, 2023, at 4:41pm.

47. Between June 7, 2023, through June 9, 2023, the School District again reported Parent to Child Protection. Child Protection stated that the concern was the treatment of E.H. because E.H. ate school lunch and I.H. and M.H. ate home lunch. The concerns were that E.H. was being treated unfairly. However, E.H. loves school lunch whereas I.H. has food allergies and M.H. is extremely picky. No one from the School District spoke with Parent about these concerns prior to making a report to Child Protection.

48. On June 9, 2023, Child Protection visited Parent's home to speak with her and the children and focused their questions primarily on the school meals. The children were interviewed during this visit.

49. On June 15, 2023, Child Protection called Parent to report that the child protection report was closed, and the assessment was completed by the County.

50. On August 10, 2023, the School District made videos from March 23, 2023, the date Parent was trespassed by the Principal, available for Parent to observe. Parent observed the video of her outside talking to the union representatives and parent advocate as well as her in the building waiting to pick up the trespass notice. Nothing else was observed on the March 23, 2023, videos.

51. The trespass notice prohibits Parent from entering the building without getting permission 24 hours in advance. Therefore, when M.H. seizures in the school building, Parent is unable to pick her up or even check on her. Parent has to work with the school staff to arrange for other supports for M.H. or other people to pick up M.H.

52. On September 5, 2023, M.H. had a seizure at school.

53. On September 7, 2023, M.H. had a seizure at school at the end of the day.

54. On September 13, 2023, I.H. and E.H. forgot to take their medication and the School Nurse had to walk them home to get their medication because Parent could not go to the building.

55. On September 14, 2023, M.H. had a seizure in school and kept falling out of her chair.

56. As a result of Defendants' actions, Plaintiffs suffered actual damages, including, but not limited to, emotional distress, inconvenience, frustration, diminished wages and/or benefits.

9

**Parent's Protected Activity and School District's Retaliatory Actions**

57. On March 8, 2023, Parent engaged in protected activity when she met with the Saint Paul Public Schools Assistant Superintendent and the School District's Principal for MCA to advocate for her special education children, including excusing mental health absences of E.H., providing consistent special education support staff for I.H., and checking in on the progress of M.H. with their IEP.

58. On March 23, 2023, the School District's Principal for MCA engaged in an adverse action by issuing a trespass order against Parent who spoke with the teacher's union representative and parent advocate and then attended the parent-teacher school conference.

59. In April 2023, the School District engaged in an adverse action by reporting Parent to Child Protection for Educational Neglect of E.H. However, E.H. had not missed any school days since March 7, 2023, which was the day before the meeting where Parent advocated for her children, including that E.H.'s absences be excused because they were mental health related.

60. On June 5, 2023, at an IEP Team Meeting the School District shared information about how they were going to handle a speech assessment in the comprehensive reevaluation of E.H. The speech assessor shared that she did not believe that E.H. needed speech therapy, even though she had not evaluated E.H. yet.

61. On June 7, 2023, Parent engaged in protected activity by objecting to the reevaluation due the speech assessor sharing preconceived ideas of what she was going to find in her assessment of E.H.

62. Between June 7, 2023, and June 9, 2023, the School District engaged in an adverse action by reporting Parent to Child Protection with little to no basis for making the report.

63. On June 15, 2023, Child Protection called Parent to report that they were closing their child protection case.

64. Parent now timely files this Complaint alleging retaliation pursuant to the Americans with Disabilities Act 42 U.S.C. § 12203(a) and Section 504 of the Rehabilitation Act 34 C.F.R. §§ 140 and 104.61 referring 34 C.F.R. § 100.7(e).

## COUNT 1: VIOLATION OF ADA

65. Parent re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

66. Both the ADA and Section 504 prohibit retaliation against any individual seeking to enforce rights under the Acts. The Acts have similar scope and aim and for purposes of retaliation analysis are often analyzed together.

67. Defendant Saint Paul Public Schools qualify as a Public Entity pursuant to Title II of ADA.

68. Defendant Saint Paul Public Schools were aware of the Parent's requests and advocacy for her special needs children.

69. Defendant Saint Paul Public Schools responded with retaliation through a trespass notice to the Parent prohibiting her from entering the school building and reporting her to child protection.

70. Plaintiffs are aggrieved persons as defined in the ADA pursuant to 42 U.S.C. § 12203(a) due to conduct prohibited in 42 U.S.C. § 12203 (b) and have suffered injuries as a result of Defendant's actions.

71. Defendant's retaliatory, adverse actions against Plaintiffs were ones that are reasonably likely to deter the Parent or others from engaging in the protected activity of advocating for children with disabilities.

72. Defendant's retaliatory, adverse actions against Plaintiffs were such that they intimidated, threatened, or interfered with any individual in the exercises or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the ADA pursuant to 42 U.S.C. § 12203(b).

73. Plaintiff children have been harmed by missing school due to the trespass notice and being reported to child protection, which included being interviewed by child protection social workers. Plaintiff parent has been harmed by her children missing school due to the trespass notice, being reported to child protection, and being unable to attend to the children's medical needs when the children are in the school building.

## COUNT 2: VIOLATION OF SECTION 504

74. Parent re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

75. Both the ADA and Section 504 prohibit retaliation against any individual seeking to enforce rights under the Acts. The Acts have similar scope and aim and for purposes of retaliation analysis are often analyzed together.

76. Defendant Saint Paul Public Schools is a local educational agency. 29 U.S.C. § 794 (b)(2)(B); 20 U.S.C. § 7801 (30).

77. Defendant Saint Paul Public Schools were aware of the Parent's requests and advocacy for her special needs children.

78. Defendant Saint Paul Public Schools responded with retaliation through a trespass notice to the Parent prohibiting her from entering the school building and reporting her to child protection.

79. Plaintiffs are aggrieved as outlined in Section 504 pursuant to 29 U.S.C. § 794, referencing 42 U.S.C. § 2000d et seq; also see, 34 C.F.R. §§ 140.3 and 104.61 referring 34 C.F.R. § 100.7(e). Plaintiffs have suffered injuries as a result of Defendant's actions.

80. Defendant's retaliatory, adverse actions against Plaintiffs were ones that are reasonably likely to deter the Parent and others from engaging in the protected activity of advocating for children with disabilities.

81. Defendant's retaliatory acts against Plaintiffs were such that they intimidated, threatened, coerced, or discriminated against any individual for the purpose of interfering

with any right or privilege protected by Section 504 pursuant to 29 U.S.C. § 794, referencing 42 U.S.C. § 2000d et seq; also see, 34 C.F.R. §§ 140.3 and 104.61 referring 34 C.F.R. § 100.7(e).

82. Plaintiff children have been harmed by missing school due to the trespass notice and being reported to child protection, which included being interviewed by child protection social workers. Plaintiff parent has been harmed by her children missing school due to the trespass notice, being reported to child protection, and being unable to attend to the children's medical needs when the children are in the school building.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs requests that this Court:

1. Declare that Defendant's retaliatory acts as set forth above violate the Americans with Disabilities Act;

2. Declare that Defendant's retaliatory acts as set forth above violate the 504 Rehabilitation Act;

3. Lift the trespass order against Parent;

4. Enjoin and restrain Defendant, the employees, agents, successors, and all other persons in active concert or participation on behalf of Defendant, from retaliating against this parent, other parents, or students advocating on behalf of special education students attending the Saint Paul Public Schools, in violation of 42 U.S.C. § 12203(a) and 29 U.S.C. § 794, referencing 42 U.S.C. § 2000d et seq;

5.     Order Defendant to take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiffs to the position they would have been in but for the retaliatory conduct;

6.     Order Defendant to take such actions as may be necessary to prevent the recurrence of retaliatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and procedures to ensure that no parent, student, nor teacher are retaliated against because they advocated for a child with a disability pursuant to 42 U.S.C. § 12203(c), referencing 42 U.S.C. § 12188(b)(2)(A); 29 U.S.C. § 794, referencing 42 U.S.C. § 2000d et seq;

7.     Award monetary damages to Parent pursuant to 42 U.S.C. § 12203(c), referencing 42 U.S.C. § 12188(b)(2)(B).

8.     Assess a civil penalty against the School District pursuant to 42 U.S.C. § 12203(c), referencing 42 U.S.C. § 12188(b)(2)(C).

9.     Awards a reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205; 29 U.S.C. § 794a(b).

10.    Order such additional relief as the interests of justice require.

Dated: September 14, 2023

Respectfully submitted,

/s/ *Laura E. Isenor*
Laura E. Isenor
Attorney Identification No. 0392263
Attorney for Plaintiffs
Staff Attorney, Education Law Advocacy Project
Southern MN Regional Legal Services, Inc.
450 North Syndicate
Suite 285
Saint Paul, MN 55104
Phone: 651-894-6927
Facsimile: 651-894-6927
Laura.Isenor@smrls.org

/s/ *Brianna Boone*
Brianna Boone
Attorney Identification No. 0397388
Attorney for Plaintiffs
Assistant Director of Litigation and Advocacy
Southern MN Regional Legal Services, Inc.
55 East Fifth Street
Suite 800
Saint Paul, MN 55101
Phone: 651-894-6942
Facsimile: 651-894-6942
Brianna.Boone@smrls.org